UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 23-51404 |
| | ) | (Jointly Administered) |
| ULTIMATE JETCHARTERS, LLC, *et al.* | ) | |
| | ) | CHAPTER 11 |
| Debtors | ) | |
| | ) | HON. ALAN M. KOSCHIK |
| | ) | BANKRUPTCY JUDGE |

**SECOND AMENDED JOINT AND CONSOLIDATED PLAN OF REORGANIZATION**

### ARTICLE I.  SUMMARY

This is the second amended joint and consolidated plan of reorganization (the "**Plan**") under Chapter 11 of the Bankruptcy Code (the "**Code**") proposed by Ultimate Jetcharters, LLC and Ultimate Jet, LLC, the debtors and debtors-in-possession (each, a "**Debtor**"; together, the "**Debtors**") in jointly administered case number 23-51404 (the "**Case**," the "**Cases**," or the "**Chapter 11 Cases**") before the United States Bankruptcy Court for the Northern District of Ohio (the "**Court**" or the "**Bankruptcy Court**").  Debtors are the jointly administered proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.  This Plan provides for one (1) class of Priority Tax Claims, two (2) classes of Secured Claims, one (1) class of Unsecured Claims, and one (1) class of equity security holders.

In this Plan, the following terms shall have the following meanings:

"**Reorganized Debtors**" means the Debtors from and after the Effective Date (defined below) of the Plan.

"**CIBC**" means CIBC Bank USA.

"**CIBC Credit Agreement**" means that certain Credit and Security Agreement, dated as of February 10, 2023, between and among CIBC as lender, Nations Consulting Group, LLC as borrower, and the other loan parties thereto (as amended or modified from time to time in accordance with, and subject to, its express terms and conditions).

"**CIBC Loan Documents**" means the "Loan Documents" as that term is defined in the CIBC Credit Agreement.

"**Event of Default**" shall have the same meaning ascribed to that term in Article VII of the CIBC Credit Agreement.

"**UJC Guaranty**" means that certain Guaranty of Payment, dated as of February 10, 2023, executed by Debtor Ultimate Jetcharters, LLC in favor of CIBC.

"**UJ Guaranty**" means that certain Guaranty of Payment, dated as of February 10, 2023, executed by Debtor Ultimate Jet, LLC in favor of CIBC.

"**Guaranties**" means and includes the UJC Guaranty and the UJ Guaranty.

"**Existing Defaults**" means and includes, without limitation, those certain Defaults, Events of Default, Violations, Specified Violations, and/or Specified Defaults (as those terms are defined in the CIBC Loan Documents, which includes, without limitation, those certain Reservation of Rights letters dated October 11, 2023 and February 21, 2024 respectfully) existing as of the date hereof, of the Debtors and Nations Consulting Group, LLC under the CIBC Loan Documents. "Existing Defaults" also includes those certain Events of Default existing as of the date hereof caused by the failure of Nations Consulting Group, LLC to pay the legal fees and expenses of CIBC (including fees and expenses that were owed prior to the Petition Date) all as required by the CIBC Credit Agreement and the CIBC Loan Documents.

"**Additional Defaults**" means any additional Events of Default, other than the Existing Defaults, occurring on or after the date of this Plan.

"**Avoidance and Recovery Actions**" means any and all causes of action or avoidance and recovery powers under Chapter 5 of the Bankruptcy Code, including, but not limited to, under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, and 551 of the Bankruptcy Code, and all recoveries or proceeds thereof.

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Cases.

"**Litigation Trust**" means that certain litigation trust created pursuant to the Plan and the Litigation Trust Agreement.

"**Litigation Trust Agreement**" means that certain litigation trust agreement entered into among the Litigation Trustee and others pursuant to the Plan, with respect to the Litigation Trust, in substantially the form to be attached as an exhibit to a plan supplement that will be filed with the Bankruptcy Court in the Cases.

"**Litigation Trustee**" means the person or entity appointed pursuant to the Plan or Litigation Trust Agreement to serve as Litigation Trustee of the Litigation Trust, and any successor appointed to that position.

**The proposed distributions under the Plan are discussed in Article III and Article IV of the Plan. General unsecured creditors are classified in Class 3. Class 3 excludes general unsecured claims now or hereafter asserted by certain persons defined in the Plan as the "Excluded Persons" (including Nations Consulting Group, LLC and CIBC Bank USA), NFS Leasing, Inc., and Ultimate Leasing, LLC.**

**As more fully described in Section 8.2(b), the Debtors project that holders of Allowed Class 3 General Unsecured Claims will receive a minimum of 12% and a maximum of 17% of their allowed claims from the "new value" Contribution (defined below) to be paid by Nations Consulting Group, LLC, according to the preliminary claims analysis attached to the Disclosure Statement as <u>Exhibit C</u>. The distribution will be paid from the Contribution to each holder of an Allowed Class 3 General Unsecured Claim no later than thirty (30) days after the Effective Date of this Plan.**

**In addition to the distribution payable to holders of Allowed Class 3 General Unsecured Claims from the Contribution, the Reorganized Debtors will assign all Avoidance and Recovery Actions to a Litigation Trust (except for those causes of action and avoidance and recovery powers against the Excluded Persons, as defined below, and against NFS Leasing, Inc., so long as the Court approves the NFS Settlement, as defined below), any**

**recoveries or proceeds from which Avoidance and Recovery Action (net of legal expenses for prosecution and collection thereof) will be distributable from the Litigation Trust to the holders of Allowed Class 3 General Unsecured Claims.**

Holders of Allowed Administrative Expense Claims will be paid in full pursuant to the terms of this Plan or upon such other terms as may be agreed upon by the holders of such claims and the Debtors. All parties reserve the right to file objections to the allowance or payment of any professional's professional fees. Holders of Allowed Priority Tax Claims will be paid in full over annual installments at a statutory interest rate.

All Creditors and equity security holders should refer to Article III below of this Plan for information regarding the precise treatment of their Claims and how this Plan will operate. A Disclosure Statement that provides more detailed information regarding this Plan and the rights of Creditors and equity security holders has been circulated with this Plan. Certain capitalized terms used herein are defined in this Plan, the Disclosure Statement, and/or the Bankruptcy Code. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II.   CLASSIFIED CLAIMS AND INTERESTS

2.1   <u>Class 1</u>.        **Secured Claims of Nations Consulting Group, LLC.**   The Debtors' estimate of the aggregate amount of Class 1 Secured Claims is set forth in <u>Exhibit C to the Disclosure Statement</u>.

2.2   <u>Class 2</u>.        **Secured Claims of CIBC Bank USA**.  The Debtors' estimate of the aggregate amount of Class 2 Secured Claims is set forth in <u>Exhibit C to the Disclosure Statement</u>.

2.3   <u>Class 3</u>.        **General Unsecured Claims**.   The Debtors' estimate of the aggregate amount of Class 3 General Unsecured Claims is set forth in <u>Exhibit C to the Disclosure Statement</u>.  This estimate is subject to adjustment as provided in this Section 2.3 of the Plan.  For the avoidance of doubt, Class 3 General Unsecured Claims shall not and do not include any unsecured claims (including, but not limited to, unsecured deficiency claims) now or hereafter asserted by any of the Excluded Persons (defined below) or, so long as the Court approves the NFS Settlement (defined below), by NFS Leasing, Inc. or Ultimate Leasing, LLC.

If any party in interest objects to allowance of a Class 3 General Unsecured Claim (each, an "**Unsecured Disputed Claim**" and, collectively, the "**Unsecured Disputed Claims**"), then that Unsecured Disputed Claim shall be an Allowed Class 3 General Unsecured Claim in the dollar amount that is allowed by final non-appealable order of the Court and shall share in distributions under Class 3.  If any person who holds a Class 3 General Unsecured Claim and who timely filed a proof of claim in either of the Cases files a proof of claim prior to the Confirmation Date to amend the

dollar amount of its Allowed Class 3 General Unsecured Claim, then (to the extent such amended claim is not thereafter disallowed by order of the Court) the dollar amount of its amended claim shall be its Allowed Class 3 General Unsecured Claim and shall share in distributions under Class 3. If any person who holds a Class 3 General Unsecured Claim and who did <u>not</u> file a proof of claim in either of the Cases asserts a "new" claim in the Cases, then (to the extent such "new" claim is not thereafter disallowed by order of the Court) the dollar amount of that "new" claim shall be an Allowed Class 3 General Unsecured Claim and shall share in distributions under Class 3. If either of the Debtors' Schedules of Assets and Liabilities are amended or modified to add any person to Part 2 of Schedule E/F whose claim had not previously been scheduled in Part 2 of Schedule E/F, or to increase the dollar amount in which a person's Allowed Class 3 General Unsecured Claim is scheduled in Part 2 of Schedule E/F, then (to the extent such newly-added or increased claim is not thereafter disallowed by order of the Court) that person's newly-added claim or the increased dollar amount of its claim, as the case may be, shall be that person's Allowed Class 3 General Unsecured Claim or shall supersede the dollar amount, if any, previously scheduled for that person as its Allowed Class 3 General Unsecured Claim, as the case may be, and shall share in distributions under Class 3.

2.5    <u>Class 4</u>.        **Interests.** All equity security interests in the Debtors.

### ARTICLE III.  TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND TAX CLAIMS

3.1    <span style="font-variant:small-caps">**Unclassified Claims**</span>. Under section §1123(a)(1), Claims Allowed by the Bankruptcy Court pursuant to §503(b) of the Code ("**Administrative Expense Claims**"), and Allowed Claims entitled to priority pursuant to §507(a)(8) ("**Priority Tax Claims**") are not in classes under this Plan and are ineligible to vote on this Plan.

3.2    <span style="font-variant:small-caps">**Administrative Expense Claims**</span>. Each holder of an Allowed Administrative Expense Claim will be paid in cash upon the later of (i) the Effective Date and (ii) the date on which such Administrative Expense is Allowed by the Court. Notwithstanding the preceding sentence, fees and expenses for professionals retained in the cases by the Debtors or by the Committee, in the amounts Allowed by the Court (each, a "**Professional Fee Claim**"), shall be paid no later than (A) sixty (60) days after the Effective Date or (B) thirty (30) days after the date on which the Professional Fee Claim is allowed by the Court. The Debtors estimate the aggregate amount of the Allowed Professional Fee Claims to be approximately $233,000.00. All parties reserve the right to file objections to the allowance or payment of any Administrative Expense Claims, including any Professional Fee Claims. all applications for allowance of Administrative Expense Claims (including Professional Fee Claims) shall be filed not later than thirty (30) days after the Effective Date or by such later date as the Court may authorize.

3.3    **TAX CLAIMS**. Each holder of an Allowed Priority Tax Claim pursuant to §507(a)(8) will be amortized and paid in regular monthly installments in cash: (a) of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) which total value shall include, if applicable, simple interest to accrue on any outstanding balance of such Allowed Priority Tax Claim starting on the Effective Date at the rate of interest determined under applicable non-bankruptcy law pursuant to section 511 of the Bankruptcy Code; and (c) with at least 20% of the Allowed amount of such claim being paid each year over a period ending not later than 5 years after the Petition Date. Debtors estimate that there exist two Priority Tax Claims totaling $250,000.00.

3.4    **UNITED STATES TRUSTEE FEES**. All fees required to be paid by 28 U.S.C. §1930(a)(6) ("**U.S. Trustee Fees**") will accrue and be timely paid until the Cases are closed, dismissed, or converted to another Chapter of the Code. Any U.S. Trustee Fees due and owing on or before the Effective Date of this Plan will be paid on the Effective Date.

## ARTICLE IV.   TREATMENT OF CLAIMS AND INTERESTS CLASSIFIED UNDER THE PLAN

4.1    **CLASSIFIED CLAIMS AND INTERESTS SHALL BE TREATED AS FOLLOWS UNDER THIS PLAN:**

| | | |
|---|---|---|
| Priority Tax Claims | Unimpaired; not entitled to vote on the Plan. | Priority Tax Claims, if Allowed, shall be paid in full in addition to interest determined under applicable non-bankruptcy law pursuant to section 511 of the Bankruptcy Code. Distributions will be made in regular monthly installments commencing on the Effective Date over a period ending not later than 5 years after the Petition Date until paid in full. In addition, the Debtors may still object to certain tax claims of the IRS and are working with the Ohio Department of Taxation on their audit on use tax assessments that may result in the reduction of tax due through an amended claim. |

| Class 1 – Secured Claims | Impaired; Entitled to vote on the Plan | Class 1 is impaired by the Plan. Nations Consulting Group, LLC ("**Nations**") is owed $8,650,031.29 (Claim No. 7), secured by a blanket security interest in all of the assets of the Debtors. The value of the assets securing the loans is $2,438,662.36 as of the Petition Date. Although Nations is under-secured, Nations shall not hold any claim in Class 3 and shall not be entitled to share in, and shall not receive:<br><br>(a) any portion of the Contribution (defined below);<br><br>(b) any GU Distributions (defined below); or<br><br>(c) any of the Avoidance and Recovery Actions or any recoveries or other proceeds thereof,<br><br>including, but not limited to, to the extent any portion of Nations' Class 1 Claim is or may be unsecured. Unless otherwise agreed by Nations and the Debtors, each holder of an Allowed Class 1 Claim will retain its lien on its collateral (excluding the Contribution, all Avoidance and Recovery Actions, and any recoveries or other proceeds thereof) until the Debtor has paid the Class 1 Claim in full. |

| Class 2 – Secured Claims | Impaired; Entitled to vote on the Plan | Class 2 is impaired by the Plan. CIBC Bank USA ("**CIBC**") is owed no less than $7,344,488.21 by the Debtors (*see* Proof of Claim No. 12-1 and 22-1) (the "**CIBC Indebtedness**") pursuant to the Debtors' respective guaranties. The CIBC Indebtedness is secured by, among other things, a valid blanket security interest in the assets of the Debtors, including, without limitation, a perfected first-priority security interest in the Debtors' deposit accounts and the funds deposited therein. The Debtors assert that the value of the assets securing the loans is no less than $577,000,00 as of the Petition Date. The Debtors assert that CIBC is under-secured. The CIBC Indebtedness shall continue to be paid by Nations Consulting Group, LLC pursuant to the CIBC Credit Agreement and the CIBC Loan Documents. CIBC shall retain its liens and security interests in the Debtors and the Reorganized Debtors' assets (including, without limitation, the "Collateral" (as that term is defined in the CIBC Credit Agreement and the CIBC Loan Documents)), but excluding the Contribution, all Avoidance and Recovery Actions, and any recoveries or other proceeds thereof, until the CIBC Indebtedness is indefeasibly paid in full. The Plan shall not be effective unless and until (i) Nations Consulting Group, LLC cures the existing defaults; and (ii) the Debtors reaffirm the Guaranties. Subject to and conditioned upon the occurrence of the Effective Date, CIBC shall not hold any claim in Class 3 and shall not be entitled to share in, and shall not receive: <br><br> (a) any portion of the Contribution (defined below); <br><br> (b) any GU Distributions (defined below); or <br><br> (c) any of the Avoidance and Recovery Actions or any recoveries or other proceeds thereof, <br><br> including, but not limited to, to the extent any portion of CIBC's Class 2 Claim is or may be unsecured. <br><br> For the avoidance of doubt, notwithstanding anything to the contrary contained in the |

Bankruptcy Code, the Disclosure Statement, the Plan, the Confirmation Order and/or any other order of this Court:

(i)      CIBC's right to assert and/or enforce a claim (including, without limitation, an unsecured claim and/or an unsecured deficiency claim) against the Debtors and/or Reorganized Debtors (or their assets) for the CIBC Indebtedness shall not be waived, discharged or released, but instead shall be fully preserved and enforceable up to the full outstanding balance of the CIBC Indebtedness if either: (a) the Effective Date does not occur; or (b) an Additional Default occurs, *except that* under no circumstances shall CIBC hold any claim in Class 3 or be entitled to share in, or to receive: (a) any portion of the Contribution; (b) any GU Distributions; or (c) any of the Avoidance and Recovery Actions or any recoveries or other proceeds thereof. Upon the occurrence of such Additional Default, or upon the failure of occurrence of the Effective Date, CIBC shall be entitled to exercise all its rights, remedies, claims, and/or defenses against the Debtors and/or the Reorganized Debtors under the CIBC Credit Agreement and CIBC Loan Documents (including, without limitation, the Guaranties), and seek to collect the full amount of the outstanding CIBC Indebtedness from the Debtors and/or the Reorganized Debtors without the necessity of any motion to, notice of, hearing on, or order of this Court, *except that* under no circumstances shall CIBC hold any claim in Class 3 or be entitled to share in, or to receive: (a) any portion of the Contribution; (b) any GU Distributions; or (c) any of the Avoidance and Recovery Actions or

|  |  |  | any recoveries or other proceeds thereof; and |
|---|---|---|---|
|  |  | (ii) | Regardless of whether the Effective Date occurs and/or whether an Additional Default occurs, CIBC's rights, remedies, claims, and defenses under the CIBC Credit Agreement, the CIBC Loan Documents or otherwise against or with respect to Nations Consulting Group, LLC, Nation Land Company, LLC, Michael Farina or any other obligor and/or guarantor (other than the Debtors) under the CIBC Credit Agreement and/or CIBC Loan Documents are fully preserved and expressly reserved. Nothing contained in the Plan and/or Confirmation Order is or shall be interpreted or construed as a waiver, limitation, modification, impairment, amendment, discharge, release, or forbearance of such rights, remedies, claims and defenses of CIBC, *except that* (for the avoidance of doubt) under no circumstances shall CIBC hold any claim in Class 3 or be entitled to share in, or to receive: (a) any portion of the Contribution; (b) any GU Distributions; or (c) any of the Avoidance and Recovery Actions or any recoveries or other proceeds thereof. |

| Class 3 – General Unsecured Claims | Impaired; Entitled to vote on the Plan | Class 3 is impaired by the Plan. Each holder of an Allowed Class 3 General Unsecured Claim shall be paid from the Contribution, not later than 30 days after the Effective Date of the Plan (the "**Distribution Date**"), a distribution in respect of its Allowed Class 3 General Unsecured Claim that is equal to not less than 12% and not more than 17% of the dollar amount of its respective Allowed Class 3 General Unsecured Claim (each, a "**GU Distribution**" and, collectively, the "**GU Distributions**"). If and to the extent the aggregate amount of the Allowed Class 3 General Unsecured Claims decreases prior to the Distribution Date as a result of partial or complete disallowance of any Unsecured Disputed Claims in Class 3, such decrease shall increase the percentage of the GU Distributions to holders of Allowed Class 3 General Unsecured Claims, up to a maximum of 17% of those holders' respective Allowed Class 3 General Unsecured Claims. To the extent the GU Distributions to be made to the holders of Allowed Class 3 General Unsecured Claims on the Distribution Date would exceed 17% of each holder's respective Allowed Class 3 General Unsecured Claim, Nations shall be entitled to a refund of that portion of the Contribution necessary to limit the GU Distribution to each holder of an Allowed Class 3 General Unsecured Claim to 17% of each holder's respective Allowed Class 3 General Unsecured Claim.

As of August 19, 2024, twelve percent (12%) of the aggregate dollar amount of Allowed Class 3 General Unsecured Claims as set forth on Exhibit C of the Disclosure Statement is $548,026.26. If and to the extent twelve percent (12)% of the aggregate amount of Allowed Class 3 General Unsecured Claims exceeds $548,026.26 on or prior to the Distribution Date as contemplated by Section 2.3 of the Plan, the amount of the Contribution that Nations must pay shall increase by the dollar amount necessary for holders of Allowed Class 3 General Unsecured Claims to receive GU Distributions equal to at least 12% of the dollar amount of those holders' respective |

| | | Allowed Class 3 General Unsecured Claims, up to a maximum Contribution of $608,026.26. In no event shall the Contribution exceed $608,026.26. |
| | | In addition, and without limiting or otherwise affecting the GU Distributions to be paid from the Contribution, each holder of an Allowed Class 3 General Unsecured Claim shall be paid a pro rata distribution of any recoveries and other proceeds derived from the Avoidance and Recovery Actions (after first deducting therefrom any legal expenses incurred to initiate and prosecute those Avoidance and Recovery Actions and to collect any such recoveries or other proceeds), if any, *except for* Avoidance and Recovery Actions against the Excluded Persons or (so long as the Court approves the NFS Settlement (defined below)) against NFS Leasing, Inc. |
| Class 4 – Interests | Unimpaired; Deemed to have accepted this Plan and will not be solicited to vote on this Plan | Class 4 is unimpaired by this Plan. The holder of Interests shall continue their equity ownership under this Plan; provided that such holders of Interest shall not receive any distributions from the Debtors or Reorganized Debtors on account of such Interests until and unless the Contribution is paid and distributed to the holders of Allowed Class 3 General Unsecured Claims and the Avoidance and Recovery Actions are assigned and conveyed to the Litigation Trust as explained below, and otherwise only as permitted under the CIBC Loan Documents. |

## ARTICLE V.   ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.1     **DISPUTED CLAIM**. A "**Disputed Claim**" is a Classified or Unclassified Claim that has not been allowed or disallowed by a final non-appealable order, or as to which either: (i) a proof of claim or an application has been filed or deemed filed, and the Debtors or the Committee have filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such Claim as disputed, contingent, or unliquidated. The Debtors and the Committee shall file objections to all Disputed Claims within ninety (90) days of the Effective Date, except that any objections to Class 3 General Unsecured Claims shall be filed not later than twenty (20) days after the Effective Date (or within such additional period as the Court may authorize). Notwithstanding the foregoing, all applications for payment of Administrative Expenses will be deemed to be Disputed Claims until such time as the application is approved by the Bankruptcy Court regardless of whether or not an objection to such application has been filed by a party in interest. For the

avoidance of doubt, the Class 1 Claim of Nations and the Class 2 Clam of CIBC are not and shall not be considered Disputed Claims.

5.2 **DELAY OF DISTRIBUTION ON A DISPUTED CLAIM**. No pro-rata or percentage payment on any Classified or Unclassified Claim due pursuant to ARTICLE III or ARTICLE IV. above of this Plan ("**Distribution**") will be made on account of a Disputed Claim unless such Claim is allowed by a final non-appealable order of the Court (in such case, becoming "**Allowed**" or an "**Allowed Claim**"). To the extent a Distribution on a Disputed Claim is delayed, the Reorganized Debtor or Litigation Trustee, as applicable, shall segregate an amount equal to such holder's pro rata share of any such Distribution and hold such amount pending final allowance or disallowance of such Claim. If a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor or Litigation Trustee, as applicable, shall make such Distribution within twenty (20) days after a final non-appealable order determining that the Disputed Claim has been Allowed. If such Disputed Claim is disallowed, then the pro rata or percentage payment to holders of Allowed claims within the same Class shall increase accordingly.

5.3 **SETTLEMENT OF DISPUTED CLAIMS**. The Debtors and the Committee shall have the power and authority to settle and compromise a Disputed Claim without Court approval or compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.4. **BAR DATES**. In its *Order Establishing General and Governmental Bar Dates* dated January 25, 2024 (Doc. 77), the Court fixed March 29, 2024, and April 12, 2024, as the last dates by which non-governmental creditors and governmental creditors, respectively, could file proofs of claim against Debtor Ultimate Jetcharters, LLC. In its *Order Establishing General and Governmental Bar Dates* dated August 7, 2024 (Doc. 225), the Court fixed September 12, 2024, as the last date by which non-governmental creditors and governmental creditors could file proofs of claim against Debtor Ultimate Jet, LLC. Collectively, those two Orders are the "**Bar Date Orders**." Any person or entity that was or is required to file a proof of claim under either of the Bar Date Orders, but that did not or does not do so on or before the respective bar dates fixed in the Bar Date Orders shall be forever barred, estopped, and enjoined from (a) asserting any such claim against the Debtors, the Debtors' bankruptcy estates, the Reorganized Debtors, the Litigation Trustee, or the Litigation Trust, and (b) receiving any distribution pursuant to the Plan or from the Litigation Trust.

## ARTICLE VI. POST CONFIRMATION REPORTING

6.1 **Reporting**. The Reorganized Debtors shall file Post Confirmation Reports with the Bankruptcy Court on a quarterly basis during the pendency of the Plan. Any reporting by the Litigation Trust or Litigation Trustee shall be governed by the provisions of the Litigation Trust Agreement or Section 8.7.6 of the Plan.

## ARTICLE VII. PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1 Upon the Effective Date, the Debtors will be conclusively deemed to have assumed its unexpired lease agreements with AvFlight Akron-Canton Corporation, Rolls-Royce Corporation, all airplane lease agreements with Nations. and the management services agreement

with Nations. The Debtors assert that there are no cure amounts associated with the aforementioned unexpired lease agreements and executory contracts. In the event the Court determines that any cure amounts are owed in connection with assumption of those agreements (or any of them), such cure amounts shall not constitute Class 3 General Unsecured Claims and shall not share in, or be paid or deducted from, the Contribution, the GU Distributions, or the Avoidance and Recovery Actions (including any recoveries or other proceeds thereof), and such cure amounts therefore shall not increase the dollar amount of the Contribution. Any non-debtor party to an assumed executory contract or unexpired lease who disputes the cure amount must file an objection with the Bankruptcy Court on or before the date upon which the Confirmation Order is entered or any earlier date as the Court may direct. Any non-debtor party to an assumed executory contract or unexpired lease who does not timely file such an objection shall be forever barred, estopped, and enjoined from (a) asserting any such cure amount against the Debtors, the Debtors' bankruptcy estates, the Reorganized Debtors, the Litigation Trustee, or the Litigation Trust, and (b) receiving any distribution with respect to such cure amount pursuant to the Plan.

7.2     Upon the Effective Date and subject to the approval of the settlement and Motion to Compromise with NFS Leasing, Inc.(the "**NFS Settlement**"), the Debtors will be conclusively deemed to have rejected its unexpired lease agreements with Ultimate Leasing, LLC and NFS Leasing, Inc., in which case, pursuant to the NFS Settlement, neither Ultimate Leasing, LLC nor NFS Leasing, Inc. shall be entitled to receive any distribution from, or to assert any pre-petition or post-petition claim of any kind or description against, the Debtors, the Debtors' bankruptcy estates, the Reorganized Debtors, the Litigation Trustee, or the Litigation Trust (including, but not limited to, any claim arising from or relating to rejection of the lease agreements) (collectively, the "**NFS / Ultimate Claims**") and Ultimate Leasing, LLC and NFS Leasing, Inc. shall not hold any claims (Allowed or otherwise) in Class 3 and shall not share in the Contribution, any GU Distributions, or any Avoidance and Recovery Actions (including any recoveries or other proceeds thereof).

7.3     The Effective Date is conditioned upon, and shall not occur until and unless: (a) the Court enters a final non-appealable order approving the NFS Settlement and NFS Leasing, Inc. and Ultimate Leasing, LLC each agree to, and do, waive, withdraw with prejudice to refiling, and release any and all NFS / Ultimate Claims as against the Debtors and their bankruptcy estates (other than NFS Leasing, Inc.'s capacity to share in one-half of the net sale proceeds derived from the sale or disposition of those three aircraft engines described in the NFS Settlement); (b) Nations Consulting Group, LLC cures the Existing Defaults; (c) Nations Consulting Group, LLC delivers the Contribution to the Debtors in the aggregate dollar amount the Plan requires; and (d) the Debtors reaffirm the Guaranties.

7.4     Aside from the Debtors' rejection of the unexpired lease agreements as part of the NFS Settlement, the Debtors are not rejecting any other executory contract or unexpired lease agreements. For the avoidance of doubt, if any person or entity nonetheless files a proof of claim allegedly resulting from the rejection of any unexpired lease or executory contract with either of the Debtors, (a) any such claim shall not constitute a claim (Allowed or otherwise) in Class 3 and shall not share in the Contribution, any GU Distributions, or any Avoidance and Recovery Actions (including any recoveries or other proceeds thereof), and (b) if and to the extent any such proof of claim is not disallowed by a later order of the Court, such claim shall be paid by the Reorganized Debtors solely from the Reorganized Debtors' operating revenue, by the later of (i) the Effective Date, or (ii) within thirty (30) days after the date upon which the Court determines the dollar amount of such claim.

# ARTICLE VIII.   MEANS FOR IMPLEMENTATION OF THE PLAN

**8.1** **VESTING OF THE DEBTORS' ASSETS AND SUBSTANTIVE CONSOLIDATION.**

(A) **VESTING**.  Except and to the extent otherwise expressly provided in the Plan, and except for the Contribution and the Avoidance and Recovery Actions (and all recoveries or other proceeds thereof), on and as of the Effective Date all property of the Debtors' respective estates and any property acquired by either of the Debtors will vest in the Reorganized Debtors, free and clear of all claims, liens, charges, other encumbrances, and interests (other than the liens, claims, and encumbrances specifically provided for in the Plan).

(B) **SUBSTANTIVE CONSOLIDATION OF THE ESTATES.**

Effective on and as of the Effective Date, (i) all assets and liabilities of the Debtors and their respective bankruptcy estates shall be deemed merged, (ii) no distribution shall be made under the Plan on account of inter-company claims among or between the Debtors; and (iii) each and every claim that is deemed filed under section 1111(a) of the Bankruptcy Code or that has been filed or hereafter is filed under section 501 of the Bankruptcy Code in the Debtors' Cases shall be deemed filed against, and (to the extent allowed under section 502(a) of the Bankruptcy Code or, if such claim is a Disputed Claim, to the extent Allowed by a final non-appealable order of the Court), shall be payable from and after the Effective Date as provided in the Plan from, the consolidated bankruptcy estate or (with respect to Allowed Class 3 General Unsecured Claims) the Litigation Trust.

**8.2** **PLAN FUNDING.**

(a) **Funding of Priority Tax Claims**. To fund payments on Allowed Priority Tax Claims, the Reorganized Debtors shall make distributions from their operating revenues in regular monthly installments commencing on the Effective Date over a period ending not later than 5 years after the Petition Date until paid in full.  In addition, the Debtors may still object to certain Tax Claims under the Plan.

(b) **New Value**.   In order to fund the GU Distributions to holders of Allowed Class 3 General Unsecured Claims under the Plan, and in consideration for retaining its Class 4 Interests, Nations shall contribute a "new value contribution."  Accordingly, the Effective Date is conditioned upon Nations delivering (and the Effective Date shall not occur until and unless Nations delivers) to the Debtors a sum of money equal to twelve percent (12%) of the aggregate dollar amount of all Allowed Class 3 General Unsecured Claims, including as the aggregate dollar amount of the Allowed Class 3 General Unsecured Claims may increase in accordance with Section 2.3 of the Plan (the "**Contribution**").  The Contribution shall be used solely and exclusively to pay holders of Allowed Class 3 General Unsecured Claims

under the Plan. Until the Debtors or Reorganized Debtors turn over the Contribution to the Litigation Trustee pursuant to the Plan, the Contribution shall be held by the Debtors or Reorganized Debtors in a segregated account that the Debtors and Reorganized Debtors, as applicable, shall identify to the Court, the Committee, Nations, the Litigation Trustee, and the office of United States Trustee, and the Contribution (and that segregated account) shall not be subject to any party in interest's security interest, lien, or other encumbrance.

Any reduction (via disallowance by order(s) of the Court or otherwise) in the aggregate amount of the Allowed Class 3 General Unsecured Claims as set forth in <u>Exhibit C to the Disclosure Statement</u> shall not reduce the dollar amount of the Contribution, except as expressly provided in the last sentence of this paragraph. If and to the extent the aggregate amount of the Allowed Class 3 General Unsecured Claims decreases prior to the Distribution Date as a result of partial or complete disallowance of any Unsecured Disputed Claims in Class 3, such decrease shall increase the percentage of the GU Distributions to holders of Allowed Class 3 General Unsecured Claims, up to a maximum of 17% of those holders' respective Allowed Class 3 General Unsecured Claims. To the extent the GU Distributions to be made to the holders of Allowed Class 3 General Unsecured Claims on the Distribution Date would exceed 17% of each holder's respective Allowed Class 3 General Unsecured Claim, Nations shall be entitled to a refund of that portion of the Contribution necessary to limit the GU Distribution to each holder of an Allowed Class 3 General Unsecured Claim to 17% of each holder's respective Allowed Class 3 General Unsecured Claim.

As of August 19, 2024, twelve percent (12%) of the aggregate dollar amount of Class 3 claims as set forth on Exhibit C of the Disclosure Statement is $548,026.26. If and to the extent twelve percent (12%) of the aggregate amount of Allowed Class 3 General Unsecured Claims exceeds $548,026.26 on or prior to the Distribution Date as contemplated by Section 2.3 of the Plan, the amount of the Contribution that Nations must pay shall increase by the dollar amount necessary for holders of Allowed Class 3 General Unsecured Claims to receive GU Distributions equal to at least 12% of the dollar amount of those holders' respective Allowed Class 3 General Unsecured Claims, up to a maximum Contribution of $608,026.26. In no event shall the Contribution exceed $608,026.26.

**8.3** **POST-CONFIRMATION OPERATIONS OF THE DEBTORS**

(a)     The Reorganized Debtors' business shall be managed by the Debtors' existing management of Stephen West as President and Chief Executive Officer. Existing management shall also be entitled to health insurance, life insurance, and reimbursement of expenses consistent with its filed monthly operating reports.

(b)     No equity holder of the Debtors or Reorganized Debtors shall take any distributions from the Reorganized Debtors on account of their equity interests until and unless the Contribution is paid and distributed to the holders of Allowed Class 3 General Unsecured Claims and the Avoidance and Recovery Actions are assigned and conveyed to the Litigation Trust as explained below, and otherwise only as permitted under the CIBC Loan Documents.

**8.4     PROCESS FOR DISTRIBUTIONS UNDER THE PLAN.**

(a)     Except as otherwise provided in the Litigation Trust Agreement or in the Plan with respect to the Litigation Trust or the Litigation Trustee, the Debtors and Reorganized Debtors shall be charged with administering this Plan, including, among other things:

i)      Collection of all Plan funding, including the Contribution from Nations.

ii)     Payment of Distributions to creditors as required under this Plan (other than to Allowed Class 3 General Unsecured Claims).

iii)    Maintenance of accounting and determination of the Distributions (other than GU Distributions) to creditors under the Plan.

iv)     Maintenance of lists of creditors owed sums under this Plan.

v)      On the Effective Date and thereafter, the Debtors and Reorganized Debtors will cooperate with the Litigation Trustee to determine the timing and amount of distributions to creditors.

On or within five (5) calendar days after the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall turn over to the Litigation Trustee the entire Contribution, including any and all interest accrued thereon, in accordance with such instructions as the Litigation Trustee may provide.

(b)     **Distributions to Class 3 Allowed General Unsecured Creditors**.  The Litigation Trustee shall make all distributions (including all GU Distributions from the Contribution) to holders of Allowed Class 3 General Unsecured Claims under the Plan.  The Debtors and Reorganized Debtors shall cooperate with the Litigation Trustee (and provide such information or documents as the Litigation Trustee may request from time to time) to facilitate the Litigation Trustee's performance of his, her, or its duties and responsibilities under the Litigation Truste Agreement and the Plan.

(c) **Distribution Date**.  Not later than thirty (30) days after the Effective Date, the Litigation Trustee shall distribute the GU Distribution among holders of Allowed Class 3 General Unsecured Claims as provided in the Plan. If any Class 3 General Unsecured Claim is an Unsecured Disputed Claim on the Distribution Date, the Litigation Trustee shall reserve from the GU Distribution the estimated distribution amount payable in respect of that Class 3 General Unsecured Claim if it was Allowed in full, pending the Court's entry or an order determining the Allowed amount of that claim. Within thirty (30) days after the Court enters a final non-appealable order determining the Allowed amount of that Unsecured Disputed Claim, the Litigation Trustee shall distribute to the holder of that Unsecured Disputed Claim the amount it is entitled to receive in accordance with the Plan and the Court's order.  If the amount reserved for that holder's Unsecured Disputed Claim exceeds the amount to which that holder is entitled (in view of the Court's order), the Litigation Trustee shall distribute the excess among the other Allowed Class 3 General Unsecured Claims, pro rata.

(d) **Excluded Persons**.  Nations, CIBC, and any of their respective affiliates, officers, directors, managers, members or other owners (collectively, the "**Excluded Persons**") shall not be entitled to share in or be paid from the Contribution, the GU Distributions, or any Avoidance and Recovery Actions (including any recoveries or other proceeds thereof), and shall not otherwise have or assert any claim (whether or not such claim is Allowed, and whether such claim is now or hereafter asserted) in Class 3 (including, but not limited to, any portion of their claims that might be deemed unsecured, such as unsecured deficiency claims).  For the avoidance of doubt, and without limiting the preceding sentence, any claim that Nations holds, including any claim it acquired from (or that was assigned to Nations by or on behalf of) any other creditor of the Debtors (or either of them) shall not be included in Class 3 and shall not share in any distributions to holders of Allowed Class 3 Unsecured Claims.

(e) **Distributions to Class 4 Holders of Allowed Interests**.  No distributions will be made to the holders of Class 4 Interests and such holders shall retain their equity interest in the Debtors.

(f) **Distributions to Unclassified Creditors**.  The Reorganized Debtors will make all distributions of Cash to holders of Allowed Administrative Expense Claims and Allowed Priority Tax Claims required by this Plan.

8.5    **ASSIGNMENT OF AVOIDANCE AND RECOVERY ACTIONS**.  ON AND AS OF THE EFFECTIVE DATE, (I) ALL AVOIDANCE AND RECOVERY ACTIONS HEREBY ARE ASSIGNED AND CONVEYED TO THE LITIGATION TRUST, FOR THE BENEFIT OF ALL HOLDERS OF ALLOWED CLASS 3 GENERAL UNSECURED CLAIMS. THE LITIGATION TRUSTEE HEREBY SHALL BE DEEMED TO BE A DULY APPOINTED REPRESENTATIVE OF THE CONSOLIDATED BANKRUPTCY ESTATE UNDER SECTION 1123(b) OF THE BANKRUPTCY CODE (AND HEREBY SHALL BE DEEMED TO

HAVE STANDING) FOR THE PURPOSE OF INVESTIGATING, INITIATING, PROSECUTING, ENFORCING, SETTLING, RECOVERING, WITHDRAWING AND COLLECTING ANY AVOIDANCE AND RECOVERY ACTIONS, ALL WITHOUT THE NECESSITY OF ANY FURTHER MOTION TO, NOTICE OF, HEARING ON, OR ORDER OF THE COURT. FOR THE AVOIDANCE OF DOUBT, THE AVOIDANCE AND RECOVERY ACTIONS HEREBY SHALL BE DEEMED TO HAVE BEEN RETAINED PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE. FROM AND AFTER THE EFFECTIVE DATE, THE LITIGATION TRUSTEE MAY ENGAGE SUCH PROFESSIONALS ACCEPTABLE TO THE LITIGATION TRUSTEE IN HIS, HER, OR ITS SOLE DISCRETION TO REPRESENT AND ASSIST THE LITIGATION TRUSTEE IN INITIATING, PROSECUTING, ENFORCING, SETTLING, RECOVERING, WITHDRAWING AND COLLECTING ANY AVOIDANCE AND RECOVERY ACTIONS, AND MAY COMPENSATE OR REIMBURSE THOSE PROFESSIONALS FOR THE REASONABLY NECESSARY FEES AND EXPENSES THEY INCUR IN PERFORMING THOSE AND RELATED SERVICES WITHOUT THE NECESSITY OF ANY FUTHER MOTION TO, NOTICE OF, HEARING ON, OR ORDER OF THE COURT.

8.6 **LIMIT ON AVOIDANCE AND RECOVERY ACTIONS**. NOTWITHSTANDING THE PROVISIONS OF SECTION 8.5, AND CONDITIONED UPON AND SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, ANY AVOIDANCE AND RECOVERY ACTIONS AGAINST THE EXCLUDED PERSONS OR (SO LONG AS THE COURT APPROVES THE NFS SETTLEMENT) AGAINST NFS LEASING, INC. SHALL NOT HEREBY BE ASSIGNED OR CONVEYED TO, AND SHALL NOT OTHERWISE BE ENFORCEABLE BY, THE LITIGATION TRUSTEE, THE DEBTORS, THE REORGANIZED DEBTORS, THE DEBTORS' ESTATES, THE COMMITTEE, ANY DEBTOR(S) IN A SUCCESSOR CASE, ANY CHAPTER 7 TRUSTEE, OR ANY OTHER PARTY IN INTEREST.

8.7 **CREATION OF LITIGATION TRUST**.

8.7.1 **Transfer of Avoidance and Recovery Actions to Litigation Trust**. On the Effective Date, all of the Debtors' and their bankruptcy estates' right, title, and interest in and to the Avoidance and Recovery Actions (including any recoveries or proceeds thereof) shall be assigned, conveyed, transferred, and delivered to and shall vest in the Litigation Trust and will be managed by the Litigation Trustee. The Debtors, including as Reorganized Debtors, shall cooperate fully with the Litigation Trustee and shall take all action reasonably necessary to effectuate that assignment, conveyance, transfer, and delivery to the Litigation Trust and to enable the Litigation Trustee to perform his, her, or its duties and obligations under the Plan and Litigation Trust Agreement.

8.7.2 **Litigation Trust Generally**. On or prior to the Effective Date, the Litigation Trust shall be established pursuant to the Litigation Trust Agreement for the purpose of liquidating the Avoidance and Recovery Actions and distributing the proceeds thereof to holders of Allowed Class 3 General Unsecured Claims according to the terms of the Plan. The Litigation Trust (and the

Litigation Trustee) shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to implement the Litigation Trust provisions of the Plan; (b) accept, preserve, receive, collect, manage, invest, supervise, prosecute, settle, and protect the Avoidance and Recovery Actions (directly or through his, her, or its professionals, in accordance with the Plan); (c) sell, liquidate, transfer, distribute, abandon, or otherwise dispose of the Avoidance and Recovery Actions (directly or through his, her, or its professionals) or any part thereof upon such terms as the Litigation Trustee determines to be necessary, appropriate, or desirable; (d) calculate and make distributions to holders of Allowed Class 3 General Unsecured Claims, including, but not limited to, all GU Distributions from the Contribution; (e) comply with the Plan and exercise the Litigation Trustee's rights and fulfill his, her, or its obligations thereunder; (f) investigate and pursue Avoidance and Recovery Actions transferred to the Litigation Trust; (g) retain and compensate professionals to represent the Litigation Trustee without further authority from the Bankruptcy Court; (h) establish and maintain a reserve for Disputed Claims in Class 3, if any; (i) file appropriate tax returns and other reports on behalf of the Litigation Trust and pay taxes or other obligations owed by the Litigation Trust; (j) exercise such other powers as may be vested in the Litigation Trustee under the Litigation Trust Agreement or the Plan, or as deemed by the Litigation Trustee to be necessary and proper to implement the provisions of the Plan and the Litigation Trust Agreement; (k) file any required reports; and (l) dissolve the Litigation Trust in accordance with the terms of the Litigation Trust Agreement and Plan. Without limiting the generality of the foregoing, the Litigation Trustee is hereby authorized to take all reasonable and necessary action to hold, preserve, and protect the trust assets (including, but not limited to, the Contribution) and to collect on, sell or otherwise liquidate, dispose of, or distribute the trust assets (and to distribute any net proceeds of the trust assets), in a prompt, efficient, and orderly fashion. The Litigation Trustee shall have the power to institute, join, or defend actions or declaratory judgments, and to take such other action, including settlement of any such action on any terms deemed reasonable by the Litigation Trustee in his, her, or its discretion, to investigate with respect to and enforce any instruments, contracts, agreements, or causes of action relating to or forming part of the Litigation Trust, including, but not limited to, the right to apply to the Bankruptcy Court for authority to conduct examinations and require production of documents pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. The Litigation Trust's primary purpose is liquidating the Avoidance and Recovery Actions, which are assets of the Litigation Trust transferred to it by the Debtors, and making distributions from the Litigation Trust (including, but not limited to, GU Distributions from the Contribution and recoveries or other proceeds of the Avoidance and Recovery Actions) to holders of Allowed Class 3 General Unsecured Claims.

8.7.3 **Funding of and Transfer of Assets into the Litigation Trust**. On the Effective Date, the Avoidance and Recovery Actions shall be deemed transferred to the Litigation Trust and the Liquidation Trustee shall thereafter make a good faith determination of the fair market value of the Avoidance and Recovery Actions. In addition, on or within five calendar days after the Effective Date, the Contribution (including any and all interest accrued thereon) shall be turned over and delivered to the Litigation Trust and the Litigation Trustee shall make a good faith determination of its fair market value. The Contribution (including accrued interest) and the Avoidance and Recovery Actions will be transferred to, vest in, and be preserved for the Litigation Trust on or as of the Effective Date, free and clear of all liens, Claims, and other encumbrances. The Debtors (or Reorganized Debtors, as applicable) will take such action as

requested by the Litigation Trustee to effectuate the turn over and delivery of the Contribution (including accrued interest) and the transfer of the Avoidance and Recovery Actions to the Litigation Trust.

A)      The Litigation Trustee shall have the authority to create sub-accounts or sub-trusts within the Litigation Trust, into which the Litigation Trustee may deposit any non-cash property pending its liquidation. The Litigation Trustee, as trustee of such sub-accounts or sub-trusts, may hold legal title to such property. Once liquidated, any cash proceeds of such sub-accounts or sub-trusts shall be deposited directly into the primary trust account.

B)      The act of transferring assets and rights to the Litigation Trust (acting by and through the Litigation Trustee), as authorized by the Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Litigation Trust as if the asset or right was still held by the Debtors. In connection with the transfer of the Avoidance and Recovery Actions, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any Avoidance and Recovery Actions, documents, or communications (whether written or oral) transferred to the Litigation Trust shall vest in the Litigation Trust and its representatives, and the Debtors, the Reorganized Debtors, and the Litigation Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges.

8.7.4   **Litigation Trustee**.   The initial Litigation Trustee shall be _____, not individually, but solely as Litigation Trustee of the Avoidance and Recovery Actions and other assets of the Litigation Trust, including the Contribution (and accrued interest). The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Trust Agreement and shall include the authority and responsibility to fulfill the rights and obligations identified in the Plan. For the avoidance of doubt, the Litigation Trustee shall have exclusive standing to investigate, initiate, prosecute, enforce, settle, recover, withdraw, and collect all Avoidance and Recovery Actions. The Litigation Trustee may retain and employ any professionals as the Litigation Trustee deems appropriate to assist the Litigation Trustee, all without any motion, notice, hearing, or further order of the Bankruptcy Court. The Litigation Trustee shall have sole authority to make distributions under the Plan to holders of Allowed Class 3 General Unsecured Claims, including, but not limited to, all GU Distributions from the Contribution and any net recoveries of other net proceeds of the Avoidance and Recovery Actions.

8.7.5   **Litigation Trust Agreement**.   The Litigation Trust Agreement generally will provide for, among other things, (a) the payment of reasonable compensation to the Litigation Trustee; (b) the payment of other expenses of the Litigation Trust, including the cost of pursuing the Avoidance and Recovery Actions assigned to the Litigation Trust; (c) the retention of counsel, accountants, financial advisors, or other professionals and the payment of their compensation; (d) the investment of cash by the Litigation Trustee within certain limitations; (e) the preparation and filing of appropriate tax returns and other reports on behalf of the Litigation Trust and the payment of taxes or other obligations owed by the Litigation Trust; (f) the orderly liquidation of the Litigation Trust's assets; and (g) the litigation, settlement, abandonment, or dismissal of any Avoidance and Recovery Actions assigned to the Litigation Trust. The final form of the Litigation Trust Agreement will be substantially in the form attached to a plan supplement, which plan

supplement shall be filed with the Bankruptcy Court in the Cases not later than five (5) calendar days prior to the Confirmation Hearing.

8.7.6 **Reports to be Filed by the Litigation Trustee**. The Litigation Trustee, on behalf of the Litigation Trust, shall file with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to the Litigation Trust Agreement), as soon as practicable after June 30 of each calendar year, an annual report regarding the administration of property subject to its ownership and control pursuant to the Plan and Litigation Trust, distributions made by the Litigation Trust, and other matters relating to the implementation of the Litigation Trust; *provided*, *however*, that the filing of any such report is solely to provide centralized access to information and there is no implication or suggestion that the Bankruptcy Court is supervising the Litigation Trustee, and, provided further, that the Litigation Trustee and the Litigation Trust shall have access to the Bankruptcy Court to pursue any actions the Litigation Trustee deems necessary or for relief he, she, or it deems required.

8.7.7 **Fees and Expenses of the Litigation Trustee for Administration of the Contribution and Performance of the GU Distributions.** Unless otherwise ordered by the Bankruptcy Court, the reasonable and necessary fees and expenses of the Litigation Trustee and any of his, her, or its professionals for services rendered to administer the Contribution and to make GU Distributions to holders of Allowed Class 3 General Unsecured Claims under the Plan and Litigation Trust Agreement (including any fees and expenses the Litigation Trustee or professionals incur to seek allowance from the Bankruptcy Court) shall be paid by the Debtors or Reorganized Debtors not later than thirty (30) days after the Litigation Trustee's and professionals' fees and expenses therefor are Allowed by the Bankruptcy Court.

8.7.8 **Fees and Expenses of the Litigation Trust Relative to Avoidance and Recovery Actions**. Unless otherwise ordered by the Bankruptcy Court, and except as provided in section 8.7.7 of the Plan, the reasonable and necessary fees and expenses of the Litigation Trustee and any of his, her, or its professionals in carrying out the Litigation Trustee's duties under the Plan or Litigation Trust Agreement (including fees and expenses the Litigation Trustee or professionals incur to investigate, initiate, prosecute, withdraw, settle, enforce, or collect any Avoidance and Recovery Actions) shall be paid from recoveries or other proceeds of the Avoidance and Recovery Actions, without any motion, notice, hearing, or further order of the Bankruptcy Court.

8.7.9 **Indemnification; Insurance**. The Litigation Trust Agreement may include reasonable and customary indemnification provisions for the benefit of the Litigation Trustee and/or other persons. Any such indemnification shall be the sole responsibility of the Litigation Trust and payable solely from recoveries or other proceeds of the Avoidance and Recovery Actions. The Litigation Trustee is authorized under this Plan to obtain reasonable and applicable insurance to protect the Litigation Trustee and the assets of the Litigation Trust.

8.7.10 **Tax Treatment**. The Litigation Trust is intended to be treated for U.S. federal income tax purposes in part as a liquidating trust described in Treasury Regulation § 301.7701-4(d) and in part as one or more Disputed Claims reserves treated either as discrete trusts taxed pursuant to Section 641 *et seq.* of the Internal Revenue Code or as disputed ownership funds described in Treasury Regulation § 1.468B-9. For federal income tax purposes, the transfer of

assets by the Debtors to the Litigation Trust will be treated in part as the transfer of assets by the Debtors to the holders of Allowed 3 General Unsecured Claims, subject to any liabilities of the Litigation Trust payable from the proceeds of such assets, followed by the transfer of such assets (subject to such liabilities) by such holders to the Litigation Trust in exchange for interests in the Litigation Trust, and in part as the transfer of assets by the Debtors to one or more Disputed Claims reserves. The holders of Allowed Class 3 General Unsecured Claims will be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the assets in the Litigation Trust (subject to such liabilities), depending on their rights to distributions under the Plan. As grantors and deemed owners of such assets, the holders of Allowed Class 3 General Unsecured Claims will be required to include in income their respective shares of the income, deductions, gains, losses and credits attributable to such assets. The holders of Allowed Class 3 General Unsecured Claims will be required to use the values assigned to such assets by the Litigation Trustee for all federal tax purposes, including the recognition of income, deduction, gain or loss with respect to their Allowed Class 3 General Unsecured Claims and any gain or loss recognized on the subsequent disposition of an asset in which the holder holds an interest. The Litigation Trust Agreement will contain certain provisions to comply with IRS guidance for trusts treated as liquidating trusts. Among other things, the agreement will: (a) require that the Litigation Trust terminate no later than five (5) years after the Effective Date, subject to extension with Bankruptcy Court approval within six (6) months of the beginning of the extended term, (b) limit the Litigation Trustee's investment powers, (c) limit the business operations carried on by the Litigation Trust to activities reasonably necessary to and consistent with the Litigation Trust's liquidating purpose, (d) prohibit the Litigation Trust from receiving or retaining cash or cash equivalents in excess of an amount reasonably necessary to meet Class 3 General Unsecured Claims and contingent liabilities or to maintain the value of the trust assets during liquidation and, (e) distribute at least annually to the holders of Allowed Class 3 General Unsecured Claims the Litigation Trust's net income and the net proceeds from the sale of Avoidance and Recovery Actions in excess of an amount reasonably necessary to meet contingent liabilities (including any Disputed Claims in Class 3, if any) and to maintain the value of the Avoidance and Recovery Actions. Proceeds of Avoidance and Recovery Actions reserved for holders of Disputed Claims in Class 3 will be treated as one or more Disputed Claims reserves for tax purposes, which will be subject to an entity-level tax on some or all of their net income or gain. No holder of a Class 3 General Unsecured Claim will be treated as the grantor or deemed owner of an asset reserved for Disputed Claims in Class 3 until such holder receives or is allocated an interest in such asset. The Litigation Trustee will file all tax returns on a basis consistent with the treatment of the Litigation Trust in part as a liquidating trust (and grantor trust pursuant to Treasury Regulation § 1.671-1(a)) and, subject to definitive guidance by the IRS, in part as one or more Disputed Claims reserves taxed as discrete trusts or disputed ownership funds, and will pay all taxes owed from the assets of the Litigation Trust, provided that income taxes of the Disputed Claims reserves shall only be paid from the assets of the Litigation Trust allocable to the Disputed Claims reserves.

8.7.11 **Disposition of Assets by the Litigation Trustee**. Subject to the provisions of the Litigation Trust Agreement, the Litigation Trustee may, without further order of the Bankruptcy Court, conduct any sales or liquidations of Avoidance and Recovery Actions from the Litigation Trust on any terms he, she, or it deems reasonable.

8.7.12 **Settlement of Causes of Actions and Disputed Claims**. Subject to the provisions of the Litigation Trust Agreement, the Litigation Trustee may settle, compromise, abandon, or withdraw any Avoidance and Recovery Actions on any grounds or terms he, she, or it deems reasonable, without further order of the Bankruptcy Court.

8.7.13 **Preservation of Causes of Action; Avoidance Actions**. On the Effective Date the Debtors will transfer to the Litigation Trustee, and on and after the Effective Date the Litigation Trustee shall have exclusive standing to investigate, initiate, prosecute, enforce, settle, recover, withdraw, and collect, all Avoidance and Recovery Actions as the representative of the bankruptcy estates under section 1123(b) of the Bankruptcy Code. On and after the Effective Date, the Litigation Trustee may enforce any Avoidance and Recovery Actions that the Debtors or the estates may hold against any person to the extent not specifically described and expressly released under the Plan or by any final non-appealable order of the Bankruptcy Court.

8.7.14 **Cooperation of Debtors and Reorganized Debtors with Litigation Trustee**. During the term of the Litigation Trust Agreement (including as such term may be extended), the Debtors and Reorganized Debtors shall preserve and make available for inspection and copying by the Litigation Trustee or his, her, or its professionals or other designees (without imposing or collecting any charge by the Debtors, the Reorganized Debtors, or their representatives), such books and records, bank statements, instruments, agreements, documents, and other information (in whatever medium or form such information is stored or maintained, including, but not limited to, that which is stored or maintained electronically) as the Litigation Trustee reasonably requests from time to time to administer the Contribution, to make any GU Distributions, or to investigate, initiate, prosecute, enforce, settle, recover, withdraw, or collect any of the Avoidance and Recovery Actions.

8.7.15 **Tax Information**. The Litigation Trustee may require holders of Allowed Class 3 General Unsecured Claims to furnish to the Litigation Trustee an employer or tax identification number as assigned by the IRS or any other applicable governmental entity, and the Litigation Trustee may condition any distribution to any holder of an Allowed Class 3 General Unsecured Claim upon receipt of such identification number. For the avoidance of doubt, the Litigation Trustee may request Bankruptcy Court authority to release funds set aside for distribution to holders of Allowed Class 3 General Unsecured Claims who have not provided proper tax identification numbers and make those funds available to the remaining holders of Allowed Class 3 General Unsecured Claims. The Litigation Trustee shall not be required to make any distributions to holders of Allowed Class 3 General Unsecured Claims who have not provided the Litigation Trustee with requested tax reporting information.

## ARTICLE IX. GENERAL PROVISIONS

9.1 **DEFINITIONS AND RULES OF CONSTRUCTION**. Except to the extent otherwise defined in the Plan, the definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. In addition, all other defined terms used herein have been defined contextually within the text of this Plan. Terms defined in this Plan, the Disclosure Statement or in Section 101 or 102 are capitalized herein. The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined.

9.2    **CONFIRMATION ORDER AND EFFECTIVE DATE OF PLAN**.  The "**Effective Date**" of this Plan is the first business day after the following events have occurred: (a) the fifteenth (15th) calendar day following the date upon which the court enters the order confirming this Plan (the "**Confirmation Order**"; the date upon which the court enters the Confirmation Order is the "**Confirmation Date**"); (b) the date upon which the conditions to effectiveness of the plan in Sections 7.3 and 8.2(b) of this Plan have been satisfied; (c) the date upon which the Existing Defaults are cured by Nations Consulting Group, LLC; and (d) the date upon which the Debtors reaffirm the Guaranties in favor of CIBC.  But if a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated.

9.3    **SEVERABILITY**.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.4    **BINDING EFFECT**.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

9.5    **CAPTIONS**.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.6    **CONTROLLING EFFECT**.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Ohio govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9.7    **NOTICES**.  Any notice required or permitted to be provided under this Plan is required to be in writing and served by one of the following: (a) certified mail, return receipt requested, postage prepaid; (b) hand delivery; (c) reputable overnight courier service, freight prepaid; or (d) fax; addressed as follows:

| | |
|---|---|
| If to the Debtors: | Ultimate Jetcharters, LLC and Ultimate Jet, LLC<br>Attn: Stephen West<br>6061 West Airport Drive<br>North Canton, OH 44720 |
| With a copy to: | Peter G. Tsarnas, Esq.<br>Gertz & Rosen, Ltd.<br>159 S. Main Street, Suite 400<br>Akron, OH 44308<br>(330) 255-0735<br>(330) 932-2367 – Fax<br>ptsarnas@gertzrosen.com |
| If to the Litigation Trustee: | Litigation Trustee<br>[TO BE INSERTED] |

9.8     **DELIVERY OF NOTICES.** If personally delivered, such communication is deemed delivered upon actual receipt; if faxed in accordance with this Plan, such communication is deemed delivered at noon of the first Business Day following transmission; if sent by overnight courier in accordance with this Plan, such communication is deemed delivered at noon of the first Business Day following deposit with such courier; and if sent by U.S. mail in accordance with this Plan, such communication is deemed delivered as of the date of delivery indicated on the receipt issued by the relevant postal service; or, if the addressee fails or refuses to accept delivery, as of the date of such failure or refusal. Any party to this Plan may change its address for the purposes of this Plan by giving notice of such change.

9.9     **INCONSISTENCY**. If any inconsistency between this Plan and the Disclosure Statement exists, the provisions of this Plan govern.

9.10    **MODIFICATION OF THE PLAN**. Debtors expressly reserve the right to alter, amend, or modify this Plan before its substantial consummation to the full extent permitted pursuant to Section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, any other applicable law or this Plan.

9.11    **RESERVED**.

9.12    **DE MINIMIS DISTRIBUTIONS**. No distributions of less than $1.00 will be made to any Creditor on account of any Claim. If a Creditor holding an Allowed Claim does not receive a distribution owing to the provisions of this section on the Effective Date, then the amount otherwise distributable to that creditor will be distributed, pro rata, among the other creditors holding allowed claims in the same class.

9.13    **CONDITIONS TO EFFECTIVENESS OF THE PLAN**.  The Effective Date (and effectiveness of this Plan) is expressly conditioned upon, and shall not occur until and unless, the conditions set forth in Sections 7.3, 8.2(b), and 9.2 of this Plan are satisfied.

9.14    **JURISDICTION**. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain such jurisdiction over the Cases after the Effective Date as follows:

   (a)     to hear and decide (1) objections to Claims; and to disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status or the amount of any Claim, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of Claims and (2) any issues relative to the Contribution or any of the GU Distributions;

   (b)     Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized under the Code incurred prior to the Confirmation of this Plan;

   (c)     to hear and determine any Avoidance and Recovery Actions unless said actions are filed in another forum with jurisdiction;

(d)        to determine turnover actions under §§ 542 and 543;

(e)        to issue revocation of a Confirmation Order under § 1144;

(f)        to order dismissal under § 1112;

(g)        to permit modification of this Plan under § 1127(b);

(h)        to enforce the permanent injunction under § 524(a); and

(i)        to issue a final decree and enter an order closing the Chapter 11 Case; and

(j)        any other matter subject to the Bankruptcy Court's jurisdiction pursuant to applicable law.

## ARTICLE X.   RELEASE, DISCHARGE, INJUNCTION AND EXCULPATION

10.1  **RELEASES**.   WITHOUT LIMITING ANY OTHER APPLICABLE PROVISIONS OF, OR RELEASES CONTAINED IN, THE PLAN, AND SUBJECT TO THE EXPRESS PROVISIONS CONTAINED IN THE PLAN, ON AND AS OF THE EFFECTIVE DATE, IN CONSIDERATION FOR THE OBLIGATIONS OF THE DEBTORS AND THE REORGANIZED DEBTORS UNDER THE PLAN AND THE CONSIDERATION AND OTHER CONTRACTS, INSTRUMENTS, RELEASE, AGREEMENTS OR DOCUMENTS TO BE ENTERED INTO OR DELIVERED IN CONNECTION WITH THE PLAN, EACH HOLDER OF A CLAIM (OTHER THAN CIBC AND NATIONS) WILL BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE ALL LIABILITIES IN ANY WAY RELATING TO THE DEBTORS, THE CHAPTER 11 CASES, THE ESTATE, THE PLAN, OR THE DISCLOSURE STATEMENT THAT SUCH ENTITY HAS, HAD OR MAY HAVE AGAINST THE DEBTORS OR IN ANY DERIVATIVE CAPACITY THROUGH OR UNDER THE DEBTORS (WHICH RELEASE WILL BE IN ADDITION TO THE DISCHARGE OF CLAIMS AND TERMINATION OF INTERESTS PROVIDED HEREIN AND UNDER THE CONFIRMATION ORDER). FOR AVOIDANCE OF DOUBT, THIS PROVISION DOES NOT BIND CIBC BANK OR NATIONS, NOR DOES THIS PROVISION OPERATE TO RELEASE THE INDIVIDUAL NON-DERIVATIVE CLAIMS OF ANY CREDITOR AGAINST THE RELEASED PARTIES.  TO FURTHER CLARIFY, NOTHING CONTAINED IN THIS PROVISION OR ELSEWHERE IN THE PLAN SHALL OPERATE TO RELEASE ANY CLAIM ANY CREDITOR MAY HAVE AGAINST ANY OF THE RELEASED PARTIES OTHER THAN THOSE CLAIMS ANY CREDITOR HAS THAT ARE DERIVATIVE IN NATURE AS DESCRIBED ABOVE. ANY PERSONAL GUARANTEE(S) OF ANY OF THE DEBTORS' SHAREHOLDERS, OFFICERS OR DIRECTORS SHALL NOT BE AFFECTED BY THIS PROVISION.

10.2  **COMMITTEE RELEASES AND WAIVER OF CHALLENGES**. NOTWITHSTANDING ANY OTHER TERM OR PROVISION OF THIS PLAN OR THE CONFIRMATION ORDER, ANY AND ALL ALLEGED AVOIDANCE AND RECOVERY ACTIONS AGAINST THE EXCLUDED PERSONS (AND SPECIFICALLY NATIONS AND CIBC) OR (SO LONG AS THE COURT APPROVES THE NFS SETTLEMENT) AGAINST NFS LEASING, INC., AND ANY AND ALL ALLEGED CHALLENGES, OBJECTIONS,

CLAIMS AND CAUSES OF ACTION DESCRIBED OR ALLUDED TO IN THE COMMITTEE'S "**WRITTEN CHALLENGE**" TO THE DEBTORS DATED MAY 15, 2024 (THE "**WRITTEN DEMAND**") AGAINST THE EXCLUDED PERSONS, SHALL BE FOREVER REMISED, RELEASED, ACQUITTED, AND DISCHARGED *IF AND ONLY IF* (NOT LATER THAN THE DISTRIBUTION DATE) EACH OF THE HOLDERS OF THE ALLOWED CLASS 3 GENERAL UNSECURED CLAIMS RECEIVES THAT HOLDER'S RESPECTIVE GU DISTRIBUTION IN THE RESPECTIVE DOLLAR AMOUNT CONTEMPLATED UNDER THE PLAN. UNTIL AND UNLESS THAT OCCURS, THE ALLEGED AVOIDANCE AND RECOVERY ACTIONS AGAINST THE EXCLUDED PERSONS AND NFS LEASING, INC. AND THE COMMITTEE'S WRITTEN DEMAND AGAINST THE EXCLUDED PERSONS SHALL NOT BE REMISED, RELEASED, ACQUITTED, OR DISCHARGED AND THEREFORE SHALL REMAIN IN FULL FORCE AND EFFECT.

10.3 **DISCHARGE**. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN (INCLUDING, WITHOUT LIMITATION, SECTION 10.6) OR IN THE CONFIRMATION ORDER, THE RIGHTS AFFORDED UNDER THE PLAN AND THE TREATMENT OF CLAIMS AND INTERESTS IN ACCORDANCE WITH THE PLAN WILL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION, DISCHARGE, AND RELEASE OF ALL CLAIMS AND TERMINATION OF ALL INTERESTS ARISING ON OR BEFORE THE EFFECTIVE DATE, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE. EXCEPT AS PROVIDED FOR IN THE PLAN OR IN THE CONFIRMATION ORDER, CONFIRMATION WILL, ONLY UPON THE OCCURENCE OF THE EFFECTIVE DATE: (I) DISCHARGE THE DEBTORS FROM ALL CLAIMS OR OTHER DEBTS THAT AROSE ON OR BEFORE THE EFFECTIVE DATE, AND ALL DEBTS OF THE KIND SPECIFIED IN SECTION 502(G), 502(H) OR 502(I) OF THE BANKRUPTCY CODE, WHETHER OR NOT (A) A PROOF OF CLAIM BASED ON SUCH DEBT IS FILED OR DEEMED FILED PURSUANT TO SECTION 501 OF THE BANKRUPTCY CODE, (B) A CLAIM BASED ON SUCH DEBT IS ALLOWED PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE, OR (C) THE HOLDER OF A CLAIM BASED ON SUCH DEBT HAS ACCEPTED THE PLAN; AND (II) TERMINATE ALL INTERESTS AND OTHER RIGHTS OF HOLDERS OF INTERESTS IN THE DEBTORS. IN ACCORDANCE WITH THE PRECEDING SENTENCE OF THIS SECTION 10.3, EXCEPT AS PROVIDED FOR IN THE PLAN, THE CONFIRMATION ORDER WILL BE A JUDICIAL DETERMINATION, AS OF THE EFFECTIVE DATE, OF A DISCHARGE OF ALL CLAIMS AND OTHER DEBTS AND LIABILITIES AGAINST THE DEBTORS AND A TERMINATION OF ALL INTERESTS AND OTHER RIGHTS OF THE HOLDERS OF INTERESTS IN THE DEBTORS, PURSUANT TO SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND SUCH DISCHARGE WILL VOID ANY JUDGMENT OBTAINED AGAINST THE DEBTORS AT ANY TIME, TO THE EXTENT THAT SUCH JUDGMENT RELATES TO A DISCHARGED CLAIM OR TERMINATED INTEREST.

10.4 **INJUNCTION**. EXCEPT AS PROVIDED IN THE PLAN (INCLUDING, WITHOUT LIMITATION, SECTION 10.6) OR THE CONFIRMATION ORDER, O N T H E E F F E C T I V E D A T E , ALL ENTITIES THAT HAVE HELD, CURRENTLY HOLD, OR MAY HOLD A CLAIM OR OTHER DEBT OR LIABILITY THAT IS UNCLASSIFIED BY THE PLAN OR THAT IS CLASSIFIED BY ARTICLES II OR III OF THE PLAN OR IS SUBJECT TO A DISTRIBUTION UNDER THE PLAN OR AN EQUITY INTEREST OR OTHER RIGHT

OF AN EQUITY SECURITY HOLDER THAT IS TERMINATED UNDER THE PLAN, UNLESS SUCH ENTTY PREVIOUSLY RECEIVED RELIEF FROM STAY TO LIQUIDATE THE VALUE OF SUCH CLAIM(S), AND ONLY TO THE EXTENT OF SUCH RELIEF FROM STAY, ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH CLAIMS, DEBTS, LIABILITIES, EQUITY RELATED CLAIMS, OR TERMINATED EQUITY INTERESTS OR RIGHTS: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST THE REORGANIZED DEBTORS, THE LITIGATION TRUST, OR THE LITIGATION TRUSTEE; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE REORGANIZED DEBTORS, THE LITIGATION TRUSTEE, THE LITIGATION TRUST, OR THEIR RESPECTIVE PROPERTY; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST THE REORGANIZED DEBTORS ,THE LITIGATION TRUSTEE, THE LITIGATION TRUST, OR THEIR RESPECTIVE PROPERTY; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO THE REORGANIZED DEBTORS, THE LITIGATION TRUSTEE, THE LITIGATION TRUST, OR THEIR RESPECTIVE PROPERTY; (E) COMMENCING OR CONTINUING ANY ACTION, IN ANY MANNER, IN ANY PLACE, THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE BANKRUPTCY CODE. NOTHING IN THIS INJUNCTION SECTION IS INTENDED TO WAIVE OR TO ENJOIN THE ENFORCEMENT BY ANY PARTY IN INTEREST OF ANY OBLIGATIONS OF THE DEBTORS, THE REORGANIZED DEBTORS, THE LITIGATION TRUSTEE, THE LITIGATION TRUST, OR ANY OTHER PERSON OR ENTITY UNDER THE PLAN.

10.5 **EXCULPATION**. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN (INCLUDING, WITHOUT LIMITATION, SECTION 10.6), ON AND AFTER THE EFFECTIVE DATE, THE DEBTORS, THE COMMITTEE, THE LITIGATION TRUSTEE, AND ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, MEMBERS, PROFESSIONALS, ATTORNEYS, OR ACCOUNTANTS (COLLECTIVELY, THE "**EXCULPATED PERSONS**") SHALL NOT HAVE AND SHALL NOT INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR EQUITY INTEREST, OR TO ANY OTHER PARTY IN INTEREST, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CASES (OR EITHER OF THE CASES), INCLUDING, BUT NOT LIMITED TO, IN CONNECTION WITH THE NEGOTIATION AND PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN (EXCLUDING ONLY ACTS AND/OR OMISSIONS BY THE EXCULPATED PERSONS UNDER THE PLAN CONSTITUTING GROSS NEGLIGENCE, BAD FAITH, OR WILLFUL MISCONDUCT, AS FINALLY DETERMINED BY A COURT OF COMPETENT JURISDICTION), AND IN ALL RESPECTS THE EXCULPATED PERSONS ARE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS OR THEIR RESPECTIVE DUTIES O R RESPONSIBILITIES UNDER THE PLAN, THE BANKRUPTCY CODE, OR IN THE CONTEXT OF THE CASES. NOTHING IN THIS EXCULPATION SECTION IS INTENDED TO WAIVE ANY OBLIGATIONS OF THE DEBTORS, REORGANIZED

10.6 **CIBC BANK USA'S RESERVATION OF RIGHTS UNDER THE CIBC CREDIT AGREEMENT AND CIBC LOAN DOCUMENTS.**

(A) Notwithstanding anything to the contrary contained in the Bankruptcy Code, the Disclosure Statement, the Plan, the Confirmation Order and/or any other order of this Court:

(i) CIBC's right to assert and/or enforce a claim (including, without limitation, an unsecured claim and/or an unsecured deficiency claim) against the Debtors and/or Reorganized Debtors (or their assets) for the CIBC Indebtedness shall not be waived, discharged or released, but instead shall be fully preserved and enforceable up to the full outstanding balance of the CIBC Indebtedness if either: (a) the Effective Date does not occur; or (b) an Additional Default occurs, *except that* under no circumstances shall CIBC hold any claim in Class 3 or be entitled to share in, or to receive: (a) any portion of the Contribution; (b) any GU Distributions; or (c) any of the Avoidance and Recovery Actions or any recoveries or other proceeds thereof. Upon the occurrence of such Additional Default, or upon the failure of occurrence of the Effective Date, CIBC shall be entitled to exercise all its rights, remedies, claims, and/or defenses against the Debtors and/or the Reorganized Debtors under the CIBC Credit Agreement and CIBC Loan Documents (including, without limitation, the Guaranties), and seek to collect the full amount of the outstanding CIBC Indebtedness from the Debtors and/or the Reorganized Debtors without the necessity of any motion to, notice of, hearing on, or order of this Court, *except that* under no circumstances shall CIBC hold any claim in Class 3 or be entitled to share in, or to receive: (a) any portion of the Contribution; (b) any GU Distributions; or (c) any of the Avoidance and Recovery Actions or any recoveries or other proceeds thereof; and

(ii) Regardless of whether the Effective Date occurs and/or whether an Additional Default occurs, CIBC's rights, remedies, claims, and defenses under the CIBC Credit Agreement, the CIBC Loan Documents or otherwise against or with respect to Nations Consulting Group, LLC, Nation Land Company, LLC, Michael Farina or any other obligor and/or guarantor (other than the Debtors) under the CIBC Credit Agreement and/or CIBC Loan Documents are fully preserved and expressly reserved. Nothing contained in the Plan and/or Confirmation Order is or shall be interpreted or construed as a waiver, limitation, modification, impairment, amendment, discharge, release, or forbearance of such rights, remedies, claims and defenses of CIBC, *except that* (for the avoidance of doubt) under no circumstances shall CIBC hold any claim in Class 3 or be entitled to share in, or to receive: (a) any portion of the Contribution; (b) any GU Distributions; or (c) any of the Avoidance and Recovery Actions or any recoveries or other proceeds thereof.

## ARTICLE XI. CONFIRMATION REQUEST

**IF ONE OR MORE IMPAIRED CLASSES OF CLAIMS AND INTERESTS FAILS TO ACCEPT THIS PLAN UNDER SECTION 1126 OF THE CODE, AND ALL OF THE APPLICABLE REQUIREMENTS OF SECTION 1129(A) OF THE CODE, OTHER THAN SECTION 1129(A)(8), HAVE BEEN SATISFIED, THE DEBTORS REQUEST THAT THE BANKRUPTCY COURT CONFIRM THIS PLAN PURSUANT TO THE PROVISIONS OF SECTION 1129(B) OF THE CODE.**

/s/ Peter G. Tsarnas
Peter G. Tsarnas, #0076934
Gertz & Rosen, Ltd.
159 S. Main Street, Suite 400
Akron, OH 44308
(330) 255-0735
(330) 932-2367 – Fax
ptsarnas@gertzrosen.com

Ultimate Jetcharters, LLC, Debtor and Debtor-In-Possession

By: /s/ Stephen West
　　　Stephen West

Ultimate Jet LLC, Debtor and Debtor-In-Possession

By: /s/ Stephen West
　　　Stephen West